**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| KIALYS SANTIAGO, | ) | |
|    Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action File |
| | ) | No. |
| ARISE VIRTUAL | ) | |
| SOLUTIONS, INC., | ) | |
| ERIKA TAX SERVICE LLC, | ) | JURY TRIAL |
| ERIKA PIERSON, | ) | DEMANDED |
| THE HOME DEPOT, INC., | ) | |
| PRINCESS CRUISE LINES, LTD, | ) | |
| and AGERO, INC. | ) | |

## COMPLAINT

**COME NOW** Plaintiff Kialys Santiago, by and through undersigned counsel,

Barrett & Farahany, LLC, and files this Complaint, showing the Court as follows:

## INTRODUCTION

1.   This is an action for minimum wage violations under the Fair Labor Standards

   Act, U.S.C. § 201 et seq. ("FLSA"), for breach of contract under Georgia law,

   and fraud under Georgia law.

## PARTIES

2.   Plaintiff Santiago is a citizen of the United States of America and a resident

   of the state of Georgia.

3.      Defendant Arise Virtual Solutions, Inc. ("Arise") is a Delaware corporation with a principal office location of 3450 Lakeside Drive, 6th Floor, Miramar, Florida 37040. Arise can be served in Georgia through its registered agent, C T Corporation System at 289 S. Culver Street, Lawrenceville, Georgia, 30045-4805.

4.      Defendant Erika Tax Service LLC ("ETS") is a Florida limited liability corporation not registered as a foreign corporation in Georgia with a principal address of 1102 S. Missouri Avenue, Apartment 302, Clearwater, Florida 33756. ETS can be served through its registered agent, Erika Pierson, at 801 West Bay Drive, Suite 310, Largo, Florida, 33770.

5.      ETS directed its business into Georgia and the actions that support the claims against ETS occurred in Georgia.

6.      Defendant Erika Pierson is a Florida resident who may be served at 801 West Bay Drive Suite 310, Largo, Florida, 33770.

7.      At all relevant times, Pierson served as the owner of ETS.

8.      Defendant The Home Depot, Inc. ("Home Depot") is a Delaware Corporation with a principal office address of 2455 West Paces Ferry Road, Atlanta, Georgia, 30339. Home Depot can be served in Georgia through its Registered

Agent, CSC of Cobb County, Inc. at 192 Anderson Street S.E., Suite 124, Marietta, Georgia, 30060.

9. Defendant Princess Cruise Lines, LTD. ("Princess"), is a Bermuda corporation not registered as a foreign corporation in Georgia with a headquarters located at 24305 Town Center Drive, Santa Clarita, California, 91355. Princess can be served through its Registered Agent CT Corporation at North Brand Boulevard, Suite 700, Glendale, California, 91203.

10. Princess directed its business into Georgia and the actions that support the claims raised against Princess occurred in Georgia.

11. Defendant Agero Inc. ("Agero") is a Delaware Corporation not registered as a foreign corporation in Georgia with a Principal office location of 400 Rivers Edge Drive, Medford, Massachusetts, 02155. It can be served through its Registered Agent CT Corporation System at 155 Federal Street, Suite 700, Boston, Massachusetts, 02110.

12. Agero directed its business into Georgia and the actions that support the claims raised against Princess occurred in Georgia.

13. At all relevant times, Home Depot, Princess, Agero, Arise, ETS and Pierson (Collectively, "Defendants") were engaged in business across state lines.

14. Specific to the Plaintiff's work, at all relevant times, Home Depot, Princess, and Agero (collectively, "Defendant Clients") sought technical support staff to field calls and emails that would come in about their products or services.

15. At all relevant times, Arise, ETS, and Pierson provided other business entities with support staff to field calls and emails that those entities would receive about their products or services.

16. At all relevant times, Defendants were subject to the minimum wage requirements of the FLSA, 29 U.S.C. § 206.

17. At all relevant times, Defendants were subject to the anti-relation provision of the FLSA, 29 U.S.C. § 215(a)(3).

18. At all relevant times, Santiago was an "employee" of the various Defendants as defined by the FLSA, 29 U.S.C. § 203(e).

## JURISDICTION AND VENUE

19. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 over Count I of this Complaint, which arises out of the FLSA.

20. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 over Count II of this Complaint, which arises out of the FLSA.

21. This Court has supplemental jurisdiction pursuant to 27 USCS § 1367 over Count III of this complaint, as it arises out of the same common nucleus of

operative fact or same case or controversy as Counts I and II, which arise out of the FLSA.

22.    This Court has supplemental jurisdiction pursuant to 27 USCS § 1367 over Count IV of this complaint, as it arises out of the same common nucleus of operative fact or same case or controversy as Counts I and II, which arise out of the FLSA.

23.    This Court has supplemental jurisdiction pursuant to 27 USCS § 1367 over Count V of this complaint, as it arises out of the same common nucleus of operative fact or same case or controversy as Counts I and II, which arise out of the FLSA.

24.    Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to this claim occurred within the Atlanta Division of the Northern District of Georgia.

## STATEMENT OF FACTS

25.    Arise contracts with incorporated entities known as Independent Business Owners ("IBOs") to hire customer support agents.

26.    Arise then connects its client companies with agents through its Arise Platform, which allows agents to schedule their work through a web browser.

27.  At all relevant times, ETS, Arise, and Pierson were joint employers of Santiago.

28.  From December 2021 until March 2022, Home Depot was a joint employer of Santiago.

29.  From April 2022 until early June 2022, Princess was a joint employer of Santiago.

30.  From June 22, 2022 until around September 15, 2022 Agero was a joint employer of Santiago.

31.  Arise hired ETS as an IBO to find customer service agents for its clients.

32.  In or around December of 2021, ETS hired Santiago as a customer service agent.

33.  Pierson texted Santiago's phone and offered her a work-from-home opportunity.

34.  Pierson and ETS created a login for Santiago to log into Arise's web portal.

35.  Santiago would use that login to access Arise's portal and view all of the clients for which she could decide to work.

36.  When viewing the portal, Santiago could not see the pay rate on the clients listed.

37.   Santiago would get the pay rates from Pierson, who was able to view them on her version of the web portal.

38.   Santiago provided the equipment and hardware she needed to perform her duties herself.

39.   Santiago scheduled her own shifts in advance.

40.   Once Santiago scheduled the shift, she had to work it.

41.   Defendants were supposed to provide her with the software and technical support necessary to perform her duties.

42.   Santiago had to go through a lengthy, unpaid training process to be "certified" to work for clients before she could actually begin working.

43.   Santiago did not get to choose her own hours for the training processes.

44.   The clients would first pay Arise.

45.   Arise would then take out fees.

46.   If there was money left over, Arise would pay ETS.

47.   ETS would then take out fees.

48.   If there was any money left over, ETS would pay Santiago.

49.   Santiago never received a breakdown or explanation of the "fees" affecting her pay.

50.   Arise could take a higher fee for alleged performance deficiencies.

51.   Santiago was only paid thirty dollars for the entire eight months she worked for ETS and Arise.

52.   Santiago would only be paid in completed thirty-minute intervals.

53.   If Santiago worked twenty-nine minutes, she would not be paid for that time.

54.   While employed by ETS and Arise, Santiago worked for three different clients.

55.   Santiago's first client was Home Depot.

56.   Santiago started working for Home Depot in December of 2021.

57.   Santiago's rate of pay at Home Depot was $14 an hour.

58.   Arise required Santiago to undergo client-specific training to work for Home Depot.

59.   Home Depot required Arise customer support agents, including Santiago, to undergo specific training to take calls for them.

60.   This was because Santiago needed to become "certified" for the assignment.

61.   Jayden Bayn was Santiago's instructor for this training.

62.   Bayn was an employee of Arise.

63.   Bayn was approved to train agents by Home Depot.

64.   This training took around nine weeks to complete.

65.     The training required five hours of training five days a week where Santiago had to be in attendance with other trainees at specific times.

66.     During one of the three phases of the training, lasting at least twenty hours, Santiago was providing real Home Depot customers technical support.

67.     The day before Santiago was to be certified, Bayn texted Santiago late at night and told her that she would not be certified.

68.     Bayn told Santiago she would not be certified because she had not completed the required amount of training hours with real customers.

69.     Arise has a policy of letting its trainees know if they start to fall behind on requirements.

70.     Throughout training, Bayn told Santiago that she was on track to be certified.

71.     Santiago was never certified to provide customer support to Home Depot.

72.     As a result, Santiago never moved past the training process.

73.     Santiago was paid only thirty dollars for the nine weeks she worked relating to Home Depot.

74.     Santiago was paid the money mentioned in Paragraph 73 through Zelle by Pierson.

75.     Santiago then began to work with Princess before May of 2022.

76.     Santiago was informed that the rate of pay at Princess was $12 an hour.

77. Santiago was required to undergo client-specific training from Arise in order to be certified to work for Princess.

78. Princess required Arise customer support agents, including Santiago, to undergo specific training to take calls for them.

79. Santiago's instructor for the Princess training was an Arise employee.

80. That instructor was approved by Princess.

81. The training consisted of seven hours a day of training for five days per week where Santiago had to be in attendance with others at specific times.

82. This training lasted for ten weeks.

83. Santiago was not paid for attending the training.

84. Instead, Santiago paid $20 to attend the training.

85. Santiago was certified to perform customer support duties for Princess.

86. Santiago was unable to take any calls for Princess.

87. Santiago could not log into the system to begin working because her login did not work.

88. Santiago was still required to be available during her shifts.

89. Santiago was told by her instructor to go to Arise's "Partner Support" to receive help.

90.   Partner Support could not help Santiago fix her problems and continued to tell her that nothing was wrong with her computer.

91.   Partner Support suggested the problem might be with the Virtual Private Network, Pulse Secure.

92.   Santiago used Pulse Secure without login problems at both Home Depot and later at Agero.

93.   Eventually, Partner Support stopped responding to Santiago's requests for help.

94.   At one point, Santiago was given a temporary ID.

95.   The temporary ID did not work after a short period of time.

96.   Santiago did not receive another temporary ID.

97.   Because Arise could not or would not help Santiago with her technical problems, she was forced to find another client to work for in early June of 2022.

98.   Plaintiff was never paid for any of the work that she performed for Princess.

99.   Santiago decided to work for Agero on June 22, 2022.

100.  Santiago's rate of pay at Agero was $12 an hour.

101.  Arise required Santiago to attend client-specific training to be certified to work for Agero.

102. Agero required Arise customer support agents, including Santiago, to undergo specific training to take calls for them.

103. Santiago's instructor for Agero was Lindsey Bennett.

104. Bennett worked for Arise.

105. Bennett was approved as an instructor by Agero.

106. The training consisted of five hours a day for five days per week.

107. This training lasted for five weeks.

108. Santiago was not paid for attending the training.

109. Instead, Santiago paid $50 to attend the training.

110. Santiago was certified on August 2, 2022.

111. Santiago immediately began working doing customer service for Agero.

112. Santiago worked for a total of sixty hours while working for Agero.

113. On or about August 24, 2022 Santiago still had not been paid.

114. Santiago contacted her Partner Support and informed them she had not been paid.

115. Partner Support told Santiago they could not give her information on why she was not being paid.

116. Partner Support also told Santiago that she needed to have ETS or Pierson contact them to retrieve the information.

117.   Pierson contacted the Partner Support.

118.   Pierson told Santiago that Santiago had shown up as "no show" or "partial no show" in the system.

119.   Santiago had worked the entirety of every shift.

120.   No one ever affirmatively contacted Santiago to inquire into her supposed no-shows.

121.   After Pierson informed her of the no-shows, Pierson and ETS directed Santiago to reach out to Agero's Performance Facilitator.

122.   Santiago then contacted her Agero Performance Facilitator, Javon Spears.

123.   Santiago told Spears that she was not being paid.

124.   Santiago also told Spears about the discrepancies between when she (Santiago) was working and when she had been reported as working.

125.   Spears told Santiago that she (Santiago) needed to contact Partner Support.

126.   Santiago said that she had done so before and asked who exactly who to contact.

127.   Partner Support told Santiago that there was nothing they could do.

128.   On August 24, 2022, Santiago emailed Spears again and told him that she would not be taking any more calls until she was paid.

129. Spears did not respond to Santiago's emails about who to contact and Santiago not working until she was paid.

130. Santiago emailed Spears again on August 29, 2022.

131. In that email, Santiago told Spears that both Pierson and Partner Support told her that they could not fix the issue.

132. Santiago asked Spears to reach out to a supervisor or some sort of higher up so that she could check what was wrong with the documentation on her ID number and get assistance.

133. On August 30, 2022, Spears again told Santiago that "we" (meaning Agero) did not handle any payroll issues.

134. Spears also again told Santiago that she needed to speak to Partner Support.

135. Santiago had reached out to everyone possible and was not able to receive assistance from Pierson, ETS, Arise, or Agero in fixing her pay or her false "no shows" in the system.

136. Santiago was never paid for any of the work she performed for Agero.

137. Around September 10, 2022, Pierson told Santiago that ETS did receive a payment.

138. Pierson also told Santiago that she (Pierson) was trying to pay her (Santiago).

139. Pierson told Santiago that she (Pierson) sent the payment.

140. Santiago never received any payment from Pierson or ETS in September of 2022.

141. On or about September 15, 2022, Santiago's access rights to Agero's online platform were terminated.

142. On or about September 15, 2022, Santiago's access rights to Arise's online platform were terminated.

## COUNTS

### COUNT I: FAILURE TO PAY MINIMUM WAGE UNDER THE FLSA (ALL DEFENDANTS)

143. Plaintiff reasserts and incorporates Paragraphs 1-142 as if fully set forth herein.

144. Arise operated an IBO scheme designed to misclassify agents like Santiago as independent contractors, as shown in Paragraphs 25-26, 34, and 36-37.

145. Arise still exercised significant control over Santiago's duties, schedule, and pay as shown in Paragraphs 26, 34-37, 41-50, 58-62, 77-79, 89, 101-05, 121-24.

146. Defendant Clients tracked and reported time worked and calls taken, as shown in Paragraphs 121-22.

147. At all relevant times, Plaintiff was required to be paid minimum wage.

148. At all relevant times, Pearson, ETS, Arise, the applicable Defendant Client were aware that Plaintiff was working.

149. Defendants willfully failed to pay a regular rate of $7.25 per hour.

150. As a result of Defendants' unlawful conduct, Plaintiff is entitled to recover actual damages, an equivalent amount as liquidated damages, attorney fees and litigation costs.

## COUNT II: RETALIATION UNDER THE FLSA
## (DEFENDANTS ARISE, ETS, PIERSON, AND AGERO)

151. Plaintiff reasserts and incorporates Paragraphs 1-150 as if fully set forth herein.

152. Plaintiff complained that she was not being paid for the work she was performing and that she would not work any more until she was paid, as shown in paragraphs 114, 123-24, 128, and 131-32.

153. Instead of seeking to fix the problem, Defendants chose to cut her access from their systems so that she could no longer schedule shifts, perform work, or sign up to work for new clients., as shown in Paragraphs 141-42.

154. In doing so, Defendants retaliated against Santiago for reporting to various management-level employees and support that she had not been paid.

155. As a result of Defendants' unlawful conduct, Plaintiff is entitled to recover actual damages, an equivalent amount as liquidated damages, attorney fees and litigation costs.

## COUNT III: BREACH OF CONTRACT UNDER GEORGIA LAW (DEFENDANTS ETS AND ARISE)

156. Plaintiff reasserts and incorporates Paragraphs 1-155 as if fully set forth herein.

157. ETS and Arise agreed to pay Santiago $14 an hour when she worked for Home Depot.

158. ETS and Arise agreed to pay Santiago around $12 an hour when she worked for Princess.

159. ETS and Arise agreed to pay Santiago $12 an hour when she worked for Agero.

160. Santiago was not paid $14 an hour when she worked for Home Depot.

161. Santiago was not paid around $12 an hour when she worked for Princess.

162. Santiago was not paid $12 an hour when she worked for Agero.

163. ETS and Arise only paid Santiago $30 for around eight months of work.

164. As a result of Defendants' unlawful conduct, Plaintiff is entitled to recover actual damages.

## COUNT IV: FRAUD UNDER GEORGIA LAW
### (DEFENDANTS ETS, PIERSON AND ARISE)

165.   Plaintiff reasserts and incorporates Paragraphs 1-164 as if fully set forth herein.

166.   Arise advertised the hourly rates on their website to Independent Business Owners, including Pierson and ETS, as shown in paragraphs 34-37.

167.   Arise advertised payment rates of $14 an hour for Home Depot, in or around late December 2021.

168.   Arise advertised payment rates of around $12 an hour for Princess in or around April or May of 2022.

169.   Arise advertised payment rates of $12 an hour for Agero on or around June 22, 2022.

170.   Arise knew that those rates were false because of the fee arrangement that they had entered into with their clients and the Independent Business Owners that they used to hire customer service agents.

171.   Arise knew that those rates were likely to attract applicants to work as customer service agents for their clients.

172.   These falsely advertised rates were intended to induce individuals like Santiago to apply to be customer service agents for their clients.

173.  These falsely advertised rates actually did cause Santiago to apply to be a customer service agent for Arise's clients.

174.  Santiago was justified in relying on the false rates that Arise had listed.

175.  Pierson and ETS communicated those false rates to Santiago.

176.  Pierson and ETS knew these rates were false because of the fee arrangement that they had entered into with Arise and their clients.

177.  Pierson and ETS knew that those rates were likely to attract applicants to work as their customer service agents and for Arise.

178.  Quoting individuals higher, false rates was intended to induce individuals like Santiago to become customer service agents under Pierson and ETS and for Arise.

179.  These falsely quoted rates actually did cause Santiago to apply to be a customer service agent for Pierson/ETS and for Arise for three clients.

180.  Arise, ETS, and Pierson benefitted financially from convincing individuals to work for Arise through them.

181.  Santiago was justified in relying on the false rates that Pierson and ETS had quoted her.

182.  Santiago performed work in reliance on those false promises.

183. Additionally, she continued to work because Arise and ETS fraudulently continued to tell her that the problems she was experiencing were client-specific.

184. Because of those representations, Santiago worked for two additional clients of ETS and Arise.

185. Santiago was not paid for her work except for a thirty-dollar one-time payment.

186. As a result of Pierson, ETS, and Arise's unlawful conduct, Plaintiff has suffered damages.

187. As a result of Pierson, ETS, and Arise's unlawful conduct, Santiago is entitled to recover actual, nominal, and punitive damages.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully prays for relief as follows:

A. For a trial by jury;

B. For a finding that Defendants violated Plaintiff's rights as set forth herein;

C. For a judgment in Plaintiff's favor for unpaid minimum wages, an equivalent amount as liquidated damages, prejudgment interest, attorneys' fees, and litigation costs;

D. For a judgment in Plaintiff's favor on her retaliation claims, full back pay, pre-judgment interest, compensatory damages, attorney fees, and litigation costs;

E. For a finding that Defendants' FLSA violations were willful;

F. Punitive damages; and

G. Any such other and further relief as the Court deems proper and just.

This 31st of October, 2022.

**BARRETT & FARAHANY**

*s/ Micah Barry*

Micah Barry
Georgia Bar No. 103184
Patrick Reid
Georgia Bar No. 88876P[1]
Provisionally Admitted Attorney
*Attorneys for Plaintiff*

P.O. Box 530092
Atlanta, Georgia 30353-0092
(404) 214-0120
(404) 445-1018
(404) 214-0125 facsimile
micah@justiceatwork.com

---

[1] Matthew Billips is the Supervising Attorney for Patrick Reid
Georgia Bar No. 057110

## **JURY DEMAND**

Plaintiff requests a jury trial on all questions of fact raised by this Complaint.

This 31st day of October, 2022.

Respectfully submitted,

**BARRETT & FARAHANY**

*s/ Micah Barry*

Micah Barry
Georgia Bar No. 103184

## <u>FONT AND POINT CERTIFICATION</u>

The undersigned counsel for Plaintiff certifies that the within and foregoing **COMPLAINT** was prepared using Times New Roman, 14-point font in accordance with LR 5.1(B).

This 31st day of October, 2022.

Respectfully submitted,

**BARRETT & FARAHANY**

*s/ Micah Barry*

Micah Barry
Georgia Bar No. 103184